UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAKE WARFIELD     CIVIL ACTION

VERSUS     NO. 18-10220

STATE FARM MUTUAL     SECTION: M (5)
AUTOMOBILE INSURANCE
COMPANY AND
ANTHONY CORDESMAN

### ORDER & REASONS

Before the Court is a motion by plaintiff Jake Warfield to remand this matter to the Civil District Court, Parish of Orleans, State of Louisiana, for lack of diversity subject-matter jurisdiction.[1] Defendants Anthony Cordesman ("Anthony") and State Farm Fire and Casualty Company ("State Farm") oppose the motion,[2] and Warfield filed a reply in further support of the motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court finds that remand is warranted.

**I.    BACKGROUND**

This case involves a personal injury. Warfield filed this action against Anthony in state court alleging Louisiana state-law claims arising out of an incident that occurred on Anthony's property.[4] Specifically, Warfield alleges that on February 27, 2017, he was performing maintenance work on Anthony's property located at 805 Franklin Avenue in New Orleans, Louisiana, when the second story balcony collapsed causing Warfield to fall two stories to the ground.[5] Warfield alleges that he "sustained severe, permanent, continuing, and disabling personal injuries, including but not limited to 25 days of hospitalization, multiple back and rib

---

[1] R. Doc. 50.
[2] R. Docs. 52 & 53.
[3] R. Doc. 61.
[4] R. Doc. 1-1 at 1-5.
[5] *Id.* at 2.

1

fractures, and severe head trauma."[6]  On October 1, 2018, Warfield filed an amended petition adding State Farm as a defendant, and his counsel sent State Farm a letter enclosing medical bills in the amount of $341,135.69.[7]

On October 31, 2018, State Farm removed this action to the United States District Court for the Eastern District of Louisiana alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[8]  State Farm alleges that the parties are completely diverse as it is a citizen of Illinois, Warfield is a citizen of Louisiana, and Anthony is a citizen of Virginia.[9]  State Farm also alleges that there is more than $75,000 in controversy as evidenced by the letter from plaintiff's counsel remitting medical bills in the amount of $341,135.69.[10]

Warfield filed a motion to remand arguing that State Farm did not meet its burden of demonstrating that the minimum amount in controversy was satisfied as of the date of removal because it did not attach the medical bills to the motion.[11]  Warfield contended that the letter from his counsel stating that his medical bills totaled $341,135.69 was insufficient because there was no evidence that those medical bills related to the accident at issue in this case.[12]

The Court denied the motion finding Warfield's argument regarding the amount in controversy to be disingenuous.[13]  State Farm met its burden of demonstrating the amount in controversy by attaching a letter that plaintiff's counsel sent to it with the petition in which plaintiff's counsel represented that Warfield's medical bills totaled $341,135.69.[14]  The Court

---

[6] *Id.* at 4.
[7] R. Doc. 1-2 at 1-6.
[8] R. Doc. 1 at 1.
[9] *Id.* at 2.
[10] *Id.* at 3.
[11] R. Doc. 9-1 at 1-8.
[12] R. Doc. 9-1 at 6-7.
[13] R. Doc. 21 at 4.
[14] *Id.*

2

found that the reasonable inference to draw from the letter transmitting the medical bills with the petition is that Warfield believed the bills were incurred as a result of the accident.[15]

Thereafter, the United States Magistrate Judge granted Warfield leave to file an amended complaint adding Bridget Cordesman ("Bridget") as a defendant.[16] Bridget, a citizen of Louisiana, is Anthony's daughter and co-owner of the Franklin Avenue property.[17] Because Bridget is alleged to be a citizen of Louisiana, as is Warfield, Warfield filed the instant second motion to remand arguing that this Court lacks diversity subject-matter jurisdiction.[18] Anthony and State Farm oppose the motion arguing that Warfield was not a citizen of Louisiana at the time of removal because he abandoned Louisiana for Idaho in July 2018.[19]

## II. LAW & ANALYSIS

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The federal district courts have original subject-matter jurisdiction based on diversity of citizenship when the cause of action is between "citizens of different States" and the amount in controversy exceeds the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Subject-matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). "Any ambiguities are construed against removal and in favor of remand to state court[,]" and "[t]he party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citations omitted).

---

[15] *Id.*
[16] R. Docs. 44 & 45.
[17] R. Doc. 45 at 1-2.
[18] R. Doc. 50.
[19] R. Doc. 52. Bridget has not yet appeared in the action.

3

For purposes of diversity subject-matter jurisdiction, a party's citizenship is determined by his or her domicile, not residence. *Combee v. Shell Oil Co.*, 615 F.2d 698, 700 (5th Cir. 1980). A person's domicile is the place where the individual resides and intends to remain. *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 767-68 (5th Cir. 2015) (citing *Acridge v. Evangelican Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003)). Domicile is evaluated in terms of objective facts. *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985). A person's words may be evidence of his or her intention to establish domicile in a particular place, but words "cannot supply the fact of [a party's] domicile." *Id.* (quoting *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954)). Instead, "the actual fact of residence and a real intention of remaining there, as disclosed by [a party's] entire course of conduct, are the controlling factors in ascertaining [a party's] domicile." *Id.* (quoting *Stine*). Thus, "'statements of intent are entitled to little weight when in conflict with facts.'" *Id.* at 556 (quoting *Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir. 1972)).

"A person's domicile persists until a new one is acquired or it is clearly abandoned." *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) (citations omitted). A presumption of continuing domicile applies when a person relocates. *Acridge*, 334 F.3d at 448 (citing *Coury*, 85 F.3d at 250). The presumption is defeated, and a new domicile established, if it is demonstrated that the person both took up residence in a new state and has the intention to remain in that state indefinitely. *Id.* (citing *Coury*, 85 F.3d at 250). "[M]ere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent. In most cases, the difficult issue is not presence but whether the intent to change domicile can be shown." *Coury*, 85 F.3d at 250 (citation omitted). To determine whether a person has changed his or her domicile a court considers where the person exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to

clubs and churches, has places of business or employment, and maintains a home for his or her family. *Acridge*, 334 F.3d at 448 (citing *Coury*, 85 F.3d at 251). All of these factors are weighed equally, and no one factor is determinative. *Id*. (citing *Coury*, 85 F.3d at 251). "There is no durational residency requirement in the establishment of domicile; once presence in the new state and intent to remain are met, the new domicile is instantaneously established." *Id.* (citation omitted).

"[T]he party seeking to show a change in domicile [must] come forward with enough evidence to that effect to withstand a directed verdict." *Coury*, 85 F.3d at 250 (citing *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986)). The Fifth Circuit has noted that "[w]hile some opinions seem to imply that the burden of persuasion rests with the party attempting to show a change of domicile, this is an overstatement." *Id.* Rather, "[t]he proper rule is that the party attempting to show a change assumes the burden of going forward on that issue [and] [t]he ultimate burden on the issue of jurisdiction rests with the plaintiff or the party invoking federal jurisdiction." *Id.* (citations omitted).

Warfield contends that he is a citizen of Louisiana, and has been throughout the pendency of this litigation. Warfield was born in Montana and left that state approximately twenty years ago.[20] Sometime around 2008, Warfield moved to 2613 Dauphine Street, New Orleans, Louisiana, where he lived at the time of the accident.[21] Warfield declares in his affidavit that he has spent the majority of his time for the past ten years in New Orleans where he was self-employed as a handyman.[22] Warfield alleges that he was disabled as a result of the accident and has been unable to work.[23] He has little to no money saved, does not have a bank account or real property, and is not registered to vote.[24]

---

[20] R. Doc. 50-6 at 1.
[21] *Id.* at 1-2.
[22] *Id.* at 2.
[23] *Id.*
[24] *Id.*

5

In July 2018, Warfield sent an email to Bridget with the subject "over nola."[25] In that email, Warfield says that he is leaving New Orleans because it no longer "make[s] any sense to hang around" and he could receive better care elsewhere in a place that would be more conducive to healing.[26] Warfield left New Orleans for New York to obtain cheaper medications from Canada.[27] He left all of his personal belongings in New Orleans.[28] He stayed in New York for about one week and then headed to Idaho because he liked the scenery and could live in his friends' recreational vehicle ("RV").[29] Warfield obtained a post office box in Idaho.[30] Warfield's friends drove him to New Orleans for his deposition in March 2019, and he moved back to the Dauphine Street address where he has lived ever since.[31] Warfield declares that he never intended to relocate permanently to New York or Idaho.[32]

The factors for analyzing a change in domicile are not particularly useful in this case. Warfield is not registered to vote, does not own any real property, and does not have a bank account.[33] He does not have a driver's license.[34] Warfield is not married and does not have any children; thus he does not maintain a home for any family.[35] There is no evidence that he pays taxes or belongs to any clubs or churches. The only two applicable prongs of the test show Warfield's connections to Louisiana: he was self-employed in Louisiana prior to the accident, and his personal property remained in Louisiana when he left in 2018.[36]

Although Warfield left Louisiana commenting that he was "over" the state, these were the words of a person who was recently injured, unable to work, and penniless, and are not

---

[25] R. Doc. 52-1.
[26] *Id.*
[27] R. Doc. 52-2 at 5.
[28] R. Doc. 50-6 at 2.
[29] R. Doc. 52-2 at 5-6.
[30] R. Doc. 52-5.
[31] *Id.* at 8; R. Doc. 50-6 at 2.
[32] R. Doc. 50-6 at 2.
[33] *Id.*
[34] R. Doc. 52-2 at 7.
[35] *Id.*
[36] R. Doc. 50-6 at 2.

sufficient evidence that Warfield truly intended to abandon his Louisiana domicile. There is also insufficient evidence that Warfield established a domicile in Idaho, where he was living in an RV with friends and had obtained a post office box. He did not establish a home of his own, nor did he move his personal property to Idaho. Indeed, on his first return to New Orleans, Warfield moved back into his Dauphine Street address where his personal belonging had remained. On the record before the Court, the defendants have not carried their burden of establishing that Warfield was not a citizen of Louisiana at the time of removal because the entire course of Warfield's conduct demonstrates that he did not abandon his Louisiana domicile.

### III. CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Warfield's motion to remand (R. Doc. 50) is GRANTED, and this matter is REMANDED to the Civil District Court, Parish of Orleans, States of Louisiana.

New Orleans, Louisiana, this 25th day of September, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE